UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PHILLIP BURNETT AND
ALLISON BURNETT

VERSUS

STATE FARM FIRE AND
CASAULTY COMPANY

CIVIL ACTION

NO. 09-CV-166

## RULING ON DEFENDANT'S MOTIONS IN LIMINE AND FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion in Limine to Exclude Testimony of Plaintiffs' Expert Spencer Maxcy (doc. 18). Plaintiffs have filed an opposition (doc. 21), and Defendant has filed a reply (doc. 23). In addition, Defendant has filed a Motion for Summary Judgment (doc. 19). Plaintiffs have filed an opposition (doc. 22), and Defendant has filed a reply (doc. 24). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

The following facts are undisputed. Plaintiffs Phillip Burnett ("Phillip") and Allison Burnett ("Allison") own a hundred-year-old home in Holden, Louisiana.[1] (doc. 19, exhibit B, p. 31). In late-2007, high winds caused a tree limb to fall on Plaintiffs' home, damaging their roof (*id.* at p. 97). Phillip removed the limb and inspected the roof and attic, but found no significant damage at that time (*id.* at p. 117-19). Upon returning home from Thanksgiving vacation, Plaintiffs discovered a small hole and water stains in their home's ceiling and puddles of water directly

---

[1] Plaintiffs replaced their roof in approximately 2000 and their entire floor in approximately 2004 (doc. 19, exhibit B, p. 106).

beneath the hole (*id.* at pp. 97-98, 125-26).  Phillip then went into the home's attic and discovered large amounts of water, and later, broken pieces of plywood (*id.* at p. 98).  Phillip placed buckets and visqueen under the hole to prevent further leaking (*id.* at p. 128).  Since that time, Plaintiffs have observed water dripping from lights in the home's ceiling (*id.* at pp. 129-30).  Moreover, the home's walls are so saturated with moisture that curtains, mirrors and pictures have fallen from the sheetrock (*id.* at p. 133).[2]

Plaintiffs then contacted their insurer, Defendant State Farm Fire and Casualty Company ("State Farm"), who sent multiple adjusters (*id.* at p. 101).  Defendant agreed to pay for the damage to the roof caused by the fallen tree limb, but declined coverage as to the water intrusion (*id.* at p. 102).  Plaintiffs' contract with Defendants specifically excludes coverage for losses "which consist of . . . mold, fungus or wet or dry rot" or that were caused by "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure (doc. 19, exhibit A, pp. 9 ¶ i, 10 ¶ c).

Plaintiffs then hired Spencer Maxcy ("Maxcy") to investigate the water intrusion (doc. 18, exhibit A, p. 34).  On September 25, 2008, Maxcy, using an infrared scanner and moisture meter, detected large amounts of water in the

---

[2] Overall, the damage to the home is extensive: there are large water stains on the ceiling; the ceiling, walls and floor are saturated with water; the floors are rotted and buckling; and mold has been discovered in the home (doc. 19, exhibit B, pp. 152-54).  Moreover, Plaintiffs claim that they have begun suffering health problems as a result of exposure to the mold.  (doc. 22, Affidavit of Allison Burnett, p. 2).

home's ceiling and walls (doc. 18, exhibit B, Maxcy Report). In his report, Maxcy stated that the "path of least resistance appears to have lead the leaking roof water through the home into the wood floor/sub-floor" (doc. 18, exhibit A, p. 55).

On December 15, 2008, Plaintiffs filed suit against Defendant, and on March 25, 2009, the case was removed to this Court (doc. 1). In their complaint, Plaintiffs seek (1) compensation for the damage to their home caused by the water intrusion and (2) damages in tort for exposure to mold resulting from Defendant's failure to pay for repairs necessitated by the water intrusion (doc. 1).

On September 24, 2010, Defendant filed its Motion in Limine (doc. 18). Defendant asserts that (1) Maxcy is not qualified to testify as to the cause of the water intrusion and (2) the methodologies employed by Maxcy are not sufficiently reliable to satisfy the *Daubert* requirements.[3] On October 15, 2010, Plaintiffs filed their Motion in Opposition (doc. 21). Plaintiffs assert that (1) Maxcy is qualified to testify as the cause of the water intrusion and (2) the methodology he employed was sufficiently reliable (doc. 21).

On September 24, 2010, Defendant also filed its Motion for Summary Judgment (doc. 19). Defendant asserts that Plaintiffs cannot produce evidence establishing that the damaged roof—rather than a source not covered by the parties' contract—caused the water intrusion (doc. 19).

---

[3] On October 23, 2010, Defendant filed its reply (doc. 23) in which it repeated its arguments.

On October 15, 2010, Plaintiffs filed their opposition (doc. 22). Plaintiffs assert that (1) Defendant's argument the parties' contract excludes Plaintiffs' losses is an affirmative defense which should have been pleaded in Defendant's answer, and is thus waived and (2) that Plaintiffs have sufficient evidence to create a genuine issue of material fact as to whether the water intrusion was caused by the damage to the home's roof (doc. 22).

On October 20, 2010, Defendant filed its reply (doc. 24). Defendant asserts that (1) it should be permitted to assert its exclusion argument, despite not asserting the defense in its answer, because Plaintiffs were adequately informed of its intention to assert the defense and (2) Plaintiffs have failed to produce evidence creating a genuine issue of material fact as to the cause of the water intrusion (doc. 24).

Summary judgment is appropriate if the evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. Rule Civ. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

I. **Defendant's Motion in Limine**

4

Defendant asserts that (1) Plaintiffs' expert, Maxcy, is unqualified to render an opinion as to the cause of the water intrusion because he has had inadequate training and does not understand how the instruments he used during his investigation work and (2) the methodology that Maxcy used to determine that the roof was the cause of the intrusion—detecting high concentrations of water in the ceiling above the area where the floor was buckling, and inferring that the moisture in the floor had come from the saturated ceiling—is not sufficiently reliable, and that his conclusion that the roof was the source of the intrusion does not require expert testimony (doc. 18).

Plaintiffs assert that (1) Maxcy is qualified to render an opinion as to the cause of the water intrusion; and (2) that the methodologies used by Maxcy to determine the cause of the intrusion are reliable in that they are grounded in common sense (doc. 21).

To qualify as an expert witness, the individual must have some special knowledge, experience, skill or training in the subject matter about which the expert is to testify. *Sullivan v. Rowan Co., Inc.*, 761 F.2d 1129, 1135 (5th Cir. 1985). Even when an expert qualifies to testify as to a particular field, the court must assure that the witness does not testify as to matters outside that field. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459-60 (5th Cir. 1996).

Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness applies the principles and

methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). That is, the court must determine whether the facts relied upon by the expert in reaching its conclusion are valid, and whether the expert has analyzed those facts using valid methodologies and reasoning in reaching the conclusion. *Id.* at 593. The court may consider the following factors in determining whether a particular methodology is sufficiently sound: (1) whether the methodology can or has been tested; (2) whether the methodology has been subject to peer review; (3) the methodology's standards and error rate; (4) whether the methodology is generally accepted. *Id.* at 592-94. The court must then determine whether the expert's methodologies and reasoning fits the facts of the case, and thereby, will assist the trier of fact in understanding the evidence. *Id.* at 591.

The Court finds that Maxcy is qualified to testify as an expert in water intrusions. He is a licensed Louisiana building inspector.[4] He has received training in how to perform infrared tests to detect the presence of water in buildings (doc. 18, exhibit A, pp. 18, 27-28).[5] In addition to his training, Maxcy has a wealth of personal experience in water intrusions. He has owned and operated businesses that engage in mold testing, moisture intrusion identification and building inspection for approximately five years, and has conducted countless investigations on those companies' behalf (*id.* pp. 8, 12-13, 17).

---

[4] In order to obtain his license, Maxcy was required to take a national test for which he took a course which lasted several months (doc. 18, exhibit A, pp. 13-15).
[5] That said, Maxcy has admitted that he cannot explain the science behind how the moisture meter, which detects the levels of saturation, works (doc. 18, exhibit A, p. 26).

Moreover, despite numerous factors which call into question the validity of Maxcy's methodologies[6], the Court finds that the methodologies Maxcy employed are sufficiently reliable. Maxcy used an infrared scanner to locate temperature variations within the home, signifying the presence of water (*id.* pp. 35, 38-39). Maxcy then used a moisture meter to determine the level of saturation in different areas of the home (*id.* pp. 35, 38-39). Maxcy detected the highest levels of water saturation—roughly 98%—and water stains in the living room ceiling, and high levels of water saturation in the floor directly below (*id.* pp. 35, 38-39). Maxcy also found lower levels of saturation in the walls of the living room, and in the ceiling in the kitchen (*id.* pp. 47-50). Based on the high levels of saturation in the ceiling and in the floor directly below it, Maxcy determined that the roof was the source of the leak (*id.* at 55). Though there may be factors which call into question the credibility of Maxcy's ultimate conclusion, Maxcy's methodology is sufficiently reliable to meet the *Daubert* standard, and any question as to credibility will best be decided by the trier of fact

---

[6] Maxcy stated that he was called only to perform a water inspection, rather than to find the cause of the water intrusion (*id.* p. 36). He failed to investigate the home's attic, roof, and recalls little about the condition of the underside of Plaintiffs' home (*id.* pp. 56, 59-60). Maxcy did not record any of the findings from the infrared scanner and included in his report only a handful of saturation measurements from the moisture meter (*id.* pp. 43-44). Other than the moisture shown in the pictures he took during his investigation, Maxcy did not record and does not remember where he saw moisture in the house (*id.* p. 48). Maxcy made no findings as to how deep the moisture in the ceiling and walls had penetrated or how long the moisture had been present (*id.* pp. 49-50). Nor did Maxcy personally witness any water dripping from the ceiling or any standing water below the saturated portion of the ceiling (*id.* p. 55).

Therefore, because Maxcy is qualified to testify as an expert witness and his testimony is sufficiently reliable and relevant, the Court will DENY Defendant's Motion in Limine (doc. 18).

**II. Causati on**

Defendant asserts that Plaintiffs have failed to produce any evidence that the water intrusion was caused by the damaged roof, and that summary judgment is therefore appropriate (doc. 19). Specifically, Defendant asserts that Plaintiffs did not observe water leaking from the roof, and that Plaintiffs' experts have made no conclusions, or unsupported conclusions, regarding the source of the intrusion (doc. 19).

In opposition, Plaintiffs assert that (1) they witnessed water coming into the home through the hole in the roof and dripping from the ceiling and (2) Maxcy's conclusion that the water originated from the roof is sufficiently reliable as a matter of common sense (doc. 21).

The Court finds that there are genuine issues of material fact which preclude a grant of summary judgment. In late-2007, a tree limb broke and damaged the roof of Plaintiffs' home (doc. 19, exhibit B, pp. 117-19). A short time thereafter, Plaintiffs discovered a small hole and stains in their home's ceiling, and puddles of water directly beneath them (*id.* pp . 97-98, 125-26). Phillip then inspected the home's attic and discovered large amounts of water, and later, broken pieces of plywood and a divot in the roof (*id.* p. 98). Since that time, Phillip has observed water dripping from lights in the home's ceiling (*id.* p.

129-30, 133). Moreover, Maxcy performed an investigation of the home and discovered that the most saturated areas in the house were the living room ceiling and the floor directly below it (doc. 18, exhibit A, pp. 47-50). This evidence directly contradicts the testimony offered by Defendants that the water intrusion resulted from surface water seeping up into the home (doc. 19). Moreover, based on the evidence, a reasonable jury could conclude that the water intrusion originated from the hole in Plaintiffs' roof.

Therefore, because there are genuine issues of material fact as to the cause of the water intrusion, the Court will DENY Defendant's Motion for Summary Judgment (doc. 19).

### III. Defendant's Affirmative Defense of Exclusion

Defendant asserts that Plaintiffs' claims must be dismissed because the water intrusion was caused by surface water, which is excluded by the parties' contract (doc. 19).

Plaintiffs assert that Defendant bears the burden of establishing that the exclusion provision applies and that Defendant waived the exclusion defense by failing to plead it in its answer (doc. 21).

Defendant asserts that it should be permitted to plead exclusion—despite failing to do so in its answer—because Plaintiff was timely notified of Defendant's intention to plead exclusion and will not be prejudiced thereby (doc. 23).

Federal Rule of Civil Procedure 8(c) requires a defendant to set forth any affirmative defenses to the plaintiff's claims in its answer, and the defendant

generally waives the defense by failing to do so. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007). *See also Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 204 (La. 2008) (stating that the applicability of an exclusion provision in an insurance policy is an affirmative defense which must be pleaded in the defendant's answer). However, a defendant does not per se waive its right to plead an affirmative defense by failing to plead the defense in its answer. *Arismendez*, 493 F.3d at 610. Instead, the court may permit the defendant to amend its answer to include the defense if the plaintiff was on notice of the defense within a reasonable time and is not prejudiced by the defendant's failure to include the defense in its answer. *Id.*

The Court finds that Plaintiffs were timely notified of Defendant's intention to assert that the parties' contract excluded the complained-of losses, and that Plaintiffs will not be prejudiced by allowing Defendant to plead the defense. The joint Status Report filed on July 18, 2009 (doc. 3) contains numerous references to Defendant's intention to contest that Plaintiffs' losses were excluded by the parties' contract: (1) Defendant stated that "damages claimed which defendant has not paid are because there is no coverage for what is remaining under the policy of insurance;" (2) Defendant listed possible experts who would testify that the water intrusion was caused by surface water, and was thus excluded by the policy; and (3) Defendant stated that whether Plaintiffs' losses were covered under the contract was one of the principal legal issues to be addressed in the case (doc. 3). Moreover, on June 16, 2010, Plaintiffs requested that the Court

appoint an independent expert on the issue of causation (doc. 8). Both Plaintiffs and Defendant have retained experts to testify as to the cause of the water intrusion, and Plaintiffs have had the opportunity to depose each of Defendant's proposed experts (doc. 19, exhibits N; doc. 22, exhibit A). Moreover, no trial date has been set for the parties' dispute.

Because Plaintiffs received adequate notice of Defendant's intention to argue exclusion, and will not be prejudiced thereby, the Court will permit Defendant to amend its answer to include the defense. Defendant has ten (10) days from the date of this ruling to file an amended answer.

## Conclusion

Accordingly, the Court DENIES Defendant's Motion in Limine to Exclude the Testimony of Plaintiffs' Expert Spencer Maxcy (doc. 18). In addition, because there are genuine issues of material fact as to the cause of the water intrusion, the Court DENIES Defendant's Motion for Summary Judgment (doc. 19). Finally, the Court grants Defendant ten (10) days to amend its answer to include the affirmative defense of exclusion.

Signed in Baton Rouge, Louisiana, this 3rd day of November, 2010.

JUDGE JAMES J. BRADY
MIDDLE DISTRICT OF LOUISIANA