UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PHILLIP BURNETT AND ALLISON BURNETT

VERSUS                                                             CIVIL ACTION NO. 09-166-JJB

STATE FARM FIRE AND CASUALTY COMPANY

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is a motion for summary judgment (Doc. 35) filed by defendant State Farm Fire and Casualty Company ("State Farm") against plaintiffs Phillip and Allison Burnett ("the Burnetts"). The Burnetts filed a response (Doc. 36), and oral argument is unnecessary. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

### I. Factual and Procedural Background

The following facts are undisputed. Plaintiffs Phillip Burnett ("Phillip") and Allison Burnett ("Allison") own a hundred-year-old home in Holden, Louisiana.[1] (Doc. 19, Ex. B, p. 31). In late-2007, high winds caused a tree limb to fall on Plaintiffs' home, damaging their roof. (*Id.*, p. 97). Phillip removed the limb and inspected the roof and attic, but found no significant damage at that time. (*Id.*, pp. 117-19). Upon returning home from Thanksgiving vacation, Plaintiffs discovered a small hole and water stains in their home's ceiling and puddles of water directly beneath the hole. (*Id.*, pp. 97-98, 125-26). Phillip then went into the home's attic and discovered large amounts of water, and later, broken pieces of plywood. (*Id.*, p. 98). Phillip placed buckets and visqueen under the hole to prevent further leaking. (*Id.*, p. 128). Since that time, Plaintiffs have observed water dripping from lights in the home's ceiling. (*Id.*, pp. 129-30). Moreover, the home's

---

[1] Plaintiffs replaced their roof in approximately 2000 and their entire floor in approximately 2004 (doc. 19, exhibit B, p. 106).

walls are so saturated with moisture that curtains, mirrors and pictures have fallen from the sheetrock. (*Id.*, p. 133).[2]

Plaintiffs then contacted State Farm, who sent multiple adjusters to their home. (*Id.*, p. 101). State Farm claims representative Rodrick Philson inspected the home and reported that he could not locate a roof leak that was causing the water damage to the floors. (Philson Affidavit, Doc. 35-3, ¶ 4). State Farm then hired Jim Danner, a professional civil engineer, to further investigate the cause of the water damage. (Statement of Undisputed Facts, Doc. 35-2, ¶ 6). Danner reported that the cause of the moisture damage was the adsorption of excess moisture from the crawl space below the residence resulting from inadequate ventilation and drainage of that space. (*Id.*, ¶ 7).

Defendant agreed to pay for the damage to the roof caused by the fallen tree limb, but declined coverage as to the water intrusion. (*Id.*, ¶¶ 5, 8). Plaintiffs' contract with Defendants specifically excludes coverage for losses "which consist of . . . mold, fungus or wet or dry rot" or that were caused by "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." (Doc. 19, Ex. A, pp. 9 ¶ i, 10 ¶ c).

Plaintiffs independently hired Spencer Maxcy ("Maxcy") to investigate the water intrusion. (Doc. 18, Ex. A, p. 34). On September 25, 2008, Maxcy, using an infrared scanner and moisture meter, detected large amounts of water in the home's ceiling and

---

[2] Overall, the damage to the home is extensive: there are large water stains on the ceiling; the ceiling, walls and floor are saturated with water; the floors are rotted and buckling; and mold has been discovered in the home. (Doc. 19, Ex. B, pp. 152-54). Moreover, Plaintiffs claim that they have begun suffering health problems as a result of exposure to the mold. (Affidavit of Allison Burnett, Doc. 22, p. 2).

Case 3:09-cv-00166-JJB -CN   Document 37   11/22/11   Page 2 of 7

walls. (Doc. 18, Ex. B, Maxcy Report). In his report, Maxcy stated that the "path of least resistance appears to have lead the leaking roof water through the home into the wood floor/sub-floor." (Doc. 18, Ex. A, p. 55).

On December 15, 2008, the Burnetts filed suit against State Farm, and on March 25, 2009, the case was removed to this Court. (Doc. 1). In their complaint, Plaintiffs seek (1) compensation for the damage to their home caused by the water intrusion, and (2) damages in tort for exposure to mold resulting from Defendant's failure to pay for repairs necessitated by the water intrusion. (*Id.*).

The Court, in response to State Farm's motion for summary judgment (Doc. 19), issued a ruling denying the motion because the Burnetts had brought forward sufficient facts to create a genuine dispute whether the damaged roof led to the water damage.

State Farm now seeks partial summary judgment on the Burnett's (1) damages, penalties, and attorney's fee claims for bad faith denial of their policy claim under La. R.S. 22:1973 and/or La. R.S. 22:1892, (2) remaining contractual claims under the policy for diminution in value of their home, inability to secure a loan, and inability to sell their house, and (3) a claim for bodily injury resulting from mold infections due to the water damage in the house. (Doc. 35).

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving

party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

### III. Law and Discussion

Plaintiffs assert La. R.S. 22:1973 provides that general and special damages may be awarded for the conduct at issue here, but does not specifically cite which prohibited act State Farm allegedly committed. State Farm assumes that only the act in Section 1973(B)(5) could apply to this case. That provision imposes insurer liability for knowingly "[f]ailing to pay the amount of any claim due any person insured by the

contract within sixty days *after receipt of satisfactory proof of loss from the claimant* when such failure is arbitrary, capricious, or without probable cause." La. R.S. 22:1973(B)(5) (emphasis added). Plaintiffs argue that the text of Section 1973 as a whole imposes a general duty of good faith and fair dealing under subsection A, any breach of which permits special and punitive damages under subsection C. However, the Louisiana Supreme Court has restricted the actions which can give rise to insurer liability under this statute to those six acts specifically listed in subsection B. *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 188-89 (La. 1997). "[W]here, as here, the legislature lists specific prohibited acts, and couples that list with a concomitant scienter requirement, those acts and those alone are the intended targets of the damages and penalties provided." *Id.* at 188. Subsection B therefore constitutes "an exclusive list of the types of conduct for which damages and penalties can be sought by insureds … pursuant to the statute." *Id.* State Farm is therefore correct in identifying Section 1973(B)(5) as the sole potential basis for its "bad faith" liability.[3]

The Louisiana Supreme Court "has declined to assess penalties when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Louisiana Bag Co., Inc. v. Audubon Indemnity Co.*, 999 So.2d 1104, 1114 (La. 2008) (internal quotations and citations omitted). Thus, "when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause." *Id.* To the extent liability is established but the

---

[3] A very similar statute, La. R.S. 22:1892, mandates slightly different punitive penalties for similar acts, though with a shorter time window for the insurer to provide payment. Because neither of these differences are material in this particular case, the Court will only address Section 1973.

precise amount is unclear, the insurer must tender a reasonable amount which is due the insured. *Id.* at 1114-15.

In response to State Farm's expert reports and evidence from its claims representative that disputes causation of the moisture intrusion, plaintiff only offers conclusory assertions that punitive liability should be available and that State Farm has vexatiously refused to timely pay the Burnetts. (Memo. in Opp., Doc. 36, pp. 4-5). Because the plaintiffs have utterly failed to direct the Court to any record evidence showing lack of good faith on the part of State Farm, they have failed to properly controvert State Farm's motion for summary judgment on this issue. Plaintiffs' claims under the bad faith statutes must therefore be dismissed.

The sole remaining issue is whether the insurance policy covers claims for economic loss—the diminution of the Burnetts' home value, their inability to secure a loan, and their inability to sell the house—and bodily injury to the Burnetts resulting from the mold infection. (*See* Memo. in Opp., Doc. 36, pp. 4-5 (asserting that economic losses and bodily injury are losses resulting from property damage and thus covered under the policy)).[4] The Burnetts once again assert only legal conclusions for their position. (*See id.*). State Farm asserts the text of the policy only covers accidental direct physical loss to the property. (Memo. in Support, Doc. 35-1, pp. 17-19).

The policy explicitly defines bodily injury and property damage. (Policy, Doc. 19-3, pp. 10-11). Property damage is limited to "physical damage to or destruction of tangible property." (*Id.*, p. 11). Under the Losses Insured section of the policy, the policy explicitly states the coverage for the Burnetts' dwelling only extends to "accidental

---

[4] Since the Burnetts make clear they are asserting a contractual claim under the policy, the Court does not discuss any conceivable tort implications of their allegations.

direct physical loss to the property described….." (*Id.*, p. 16).  The Court fails to see how the economic loss and bodily injury claims can fit within the policy's definition of the coverage provided.  Plaintiffs' conclusory assertions fail to bring to the Court's attention any other insurance provisions or relevant case law that might mandate a contrary conclusion.  Because the insurance policy simply did not insure the Burnetts against the types of losses they seek to squeeze within the policy language, the Court finds summary judgment in State's Farm's favor on these claims is warranted.

## IV. Conclusion; Order

State Farm's motion for partial summary judgment (Doc. 35) is hereby GRANTED.

Signed in Baton Rouge, Louisiana, on November 21, 2011.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**