UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

PHILLIP BURNETT AND
ALLISON BURNETT

CIVIL ACTION

VERSUS

NO. 09-166-JJB

STATE FARM FIRE AND CASUALTY
COMPANY

## RULING ON STATE FARM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant State Farm Fire and Casualty Company moves for summary judgment (Doc. 55) on a tort claim for negligent inspection brought by plaintiffs Phillip and Allison Burnett. The Burnetts filed an opposition (Doc. 58), and State Farm filed a reply (Doc. 60). The Burnetts also sought oral argument (Doc. 61), which the Court finds unnecessary. Jurisdiction exists under 28 U.S.C. § 1332.

I.

The following facts are undisputed or must be taken as true for purposes of this motion. The Burnetts own a hundred-year-old home in Holden, Louisiana. (Affidavit of Phillip Burnett, Doc. 19-4, at 31). They replaced their roof in approximately 2000 and their entire floor in approximately 2004. (*Id.* at 106). In late 2007, high winds caused a tree limb to fall on their home, damaging their roof. (*Id.* at 97). Phillip removed the limb and inspected the roof and attic, but found no significant damage at that time. (*Id.* at 117-19). Upon returning home from Thanksgiving vacation, plaintiffs discovered a small hole and water stains in their home's ceiling and puddles of water directly beneath the hole. (*Id.* at 97-98, 125-26). Phillip then went into the home's attic and discovered large amounts of water and, later, broken pieces of plywood. (*Id.* at 98). Phillip placed buckets and visqueen under the hole to prevent further leaking. (*Id.* at 128).

1

Since that time, plaintiffs have observed water dripping from lights in the home's ceiling. (*Id.* at 129-30). Moreover, the home's walls are so saturated with moisture that curtains, mirrors and pictures have fallen from the sheetrock. (*Id.* at 133).

The Burnetts then contacted State Farm, their homeowners' insurer on February 21, 2008, and on March 4, 2008, Rodrick Philson, a field adjuster with State Farm, inspected their property. (Statement of Undisputed Facts, Doc. 58-1, at ¶5). Philson issued the Burnetts a draft for the repairs State Farm thought covered under the policy. (*Id.*). The Burnetts dispute whether Philson conducted an adequate investigation of their attic and whether he tendered a check adequate to pay for the necessary repairs. (Aff. of Phillip Burnett, Doc. 19-4, at 101-03). The draft purported to pay for the damage to the roof caused by the fallen tree limb, but declined coverage as to the water intrusion. The policy excludes coverage for losses "which consist of … mold, fungus or wet or dry rot" or that were caused by "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure." (Policy, Doc. 19-3, at 18, § 1.i and 19, § 2.c(3)).

Unhappy with Philson's draft, Phillip Burnett e-mailed Philson pictures of the areas of the attic he felt Philson missed. (*See* E-mail Correspondence between Burnett and Philson, Doc. 58-2, at 7-12). Philson disregarded the pictures in the e-mails apparently because the file sizes jammed up his e-mail system. (*Id.* at 7-8). He never responded to Burnett's concern that the pictures would not show up well via fax submission. (*Id.*).

State Farm eventually sent out a civil engineer named Jim Danner to conduct another investigation, who reported to State Farm that the cause of water damage was absorption from excess moisture in the crawl space below the Burnetts' home. (Statement of Undisputed Facts,

2

Doc. 58-1, at ¶ 7). On April 2, 2008, State Farm denied further payment to the Burnetts based on its determination that the moisture intrusion was caused by surface water, which in turn was caused by inadequate design of the property and crawl space. (Affidavit of Terry Downs, Doc. 35-3, ¶ 7; Coverage Denial Letter, Doc. 35-3, at 4-5).

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the

opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

Louisiana follows the duty-risk analysis for assessing negligence claims. The Louisiana Supreme Court has set forth five elements:

(1) Proof that the defendant had a duty to conform his conduct to a specific standard (the duty element);
(2) Proof that the defendant's conduct failed to conform to the appropriate standard (the breach element);
(3) Proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
(4) Proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
(5) Proof of actual damages (the damages element).

*Fowler v. Roberts*, 556 So.2d 1, 4 (La. 1989). The question of whether a duty exists in a particular set of circumstances is a question of law. *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364, 1371 (La. 1984). "An insurer … owes to his insured a duty of good faith and fair dealing." La. R.S. 22:1973(A). This statutory language imposing the duty of good faith and fair dealing "recognizes the jurisprudentially established duty of good faith and fair dealing owed to the insured, which is an outgrowth of the contractual and fiduciary relationship between the insured and insurer." *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 187 (La. 1997).[1]

Although "[t]he doctrine of negligence per se has been rejected in Louisiana[,] … statutory violations provide guidelines for civil liability." *Galloway v. State Dep't of Transportation and Development*, 654 So.2d 1345, 1347 (La. 1995). In determining the existence of a delictual civil duty owed to a specific person, courts may examine statutory duties

---

[1] In this regard, the statute confirms an independent, pre-existing duty, and it provides special penalties under subsection C for insurers who breach that duty through one of the acts in subsection B. Contrary to State Farm's suggestion, the statute does not circumscribe the pre-existing duty the Burnetts sue under here.

4

and decide (1) whether the person falls within the class of persons the statute was intended to protect, and (2) whether the harm complained of was of the kind which the statute was intended, in general, to prevent. *Clomon v. Monroe City Sch. Bd.*, 572 So.2d 571, 577 (La. 1990).

Louisiana statute forbids an insurer from "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." La. R.S. 22:1964(14)(d). Statutory claims under La. R.S. 22:1964 can only be enforced by the Commissioner of Insurance and cannot be enforced indirectly through La. R.S. 22:1973. *Theriot*, 694 So.2d at 188; *see also* La. R.S. 22:1967 *and Klein v. Am. Life & Cas. Co.*, 858 So.2d 527, 533 (La. App. 1st Cir.), *writ denied*, 857 So.2d 499 (La. 2003). Thus, third-party claimants against the defendant-insurer (*i.e.*, non-insureds) cannot avail themselves of private enforcement actions for "the entire list of unfair settlement practices" contained in La. R.S. 22:1964(14) (formerly La. R.S. 22:1214) but rather only the "smaller number of acts deemed appropriate for private [third-party] enforcement" embodied in La. R.S. 22:1973 (formerly La. R.S. 22:1220). *Theriot*, 694 So.2d at 192. Therefore, the robust statutory penalties provided for in La. R.S. 22:1973(C) only apply to the six actions delineated in 22:1973(B).

Nonetheless, "[t]he Insurance Code defines the obligation of an insurer in terms of such magnitude as to describe a legal duty … to policyholders beyond whatever action the [Commissioner of Insurance] is empowered to take." *French Market Plaza Corp. v. Sequoia Ins. Co.*, 480 F.Supp. 821, 826 (E.D. La. 1979); *see also Southwest La. Convention & Visitors Bureau v. Employers Mut. Cas. Co.*, No. 06-2006, 2009 WL 54295, at *1 (W.D. La. Jan. 7, 2009) (citing *French Market*). As *Theriot* explicitly noted, its "holding does not affects rights and causes of action the insured may have directly against his own insurer for breach of the implied covenant of good faith and fair dealing arising out of the contractual and fiduciary

relationship between those parties." 694 So.2d at 192, n. 15. *Theriot* shows the duty of good faith and fair dealing does not arise via statute, only that the statute incentivizes compliance with that pre-existing duty by adding penalty provisions. Therefore, despite the unavailability of the statutory punitive damage provisions in this case, an insured may, consistently with *Theriot* and *French Market*, sue its insurer based on a breach of the insurer's fiduciary duty of good faith and fair dealing.

As the Louisiana Supreme Court in *Galloway* and *Clomon* made clear, the statutory prohibition against refusing to pay a claim without conducting a reasonable investigation embodied in La. R.S. 22:1964(14)(d), even if only statutorily enforceable by the Insurance Commissioner, may nonetheless provide guidelines for State Farm's civil liability to the Burnetts under the general duty of good faith and fair dealing. Because the Insurance Code's prohibitions operate to protect insurance consumers and the statute sought to prevent harm created by unfair claims settlement practices which led to insurers unreasonably denying claims without adequate information, the Court finds the Burnetts may sue State Farm for negligent inspection.

IV.

Because the Court finds the Burnetts have shown State Farm owes it a duty, the Court must now examine the potential for State Farm to be found liable under the remaining elements. Genuine disputes of material fact exist as to whether State Farm breached its duty. In fact, State Farm has not brought forward any competent summary judgment evidence from which to show support for the fact that it conducted a reasonable investigation. Philson, the adjuster who originally looked at the Burnetts' damaged home, has not been heard from in this case, either by deposition or by affidavit. Danner, State Farm's other investigator, submitted a report, but it is unsworn. (*See* Doc. 19-13). "Unsworn expert reports do not qualify as affidavits or otherwise

6

admissible evidence for the purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) (citations, quotations, and punctuation marks omitted). The Burnetts, on the other hand, have adequately supported their breach allegations with deposition testimony and documentation showing they attempted to bring certain details Philson may have overlooked to his attention, only to be met with bureaucratic intransigence. Moreover, they have introduced competent evidence that Danner negligently inspected the house by also failing to go into the attic or onto the roof. (Aff. of Phillip Burnett, Doc. 19-4, at 105-09). State Farm has simply not introduced into the record competent summary judgment evidence from *anyone* with personal knowledge of State Farm's investigation at the Burnetts' house.

The failure to conduct such a reasonable investigation and the willful refusal to at least acknowledge information supporting the insured's claim would be a breach of State Farm's duty of good faith and fair dealing causing continuing loss to the Burnetts in the form of withheld payments, which in turn caused the Burnetts to pay for repairs out of pocket. These alleged damages come squarely within the cause-in-fact and scope of protection elements of the duty-risk analysis. The Burnetts have made out a cognizable claim and supported it with evidence creating genuine disputes of material fact, rendering summary judgment for State Farm inappropriate.

V.

Accordingly, State Farm's motion for summary judgment (Doc. 55) is DENIED. The Burnetts' motion for oral argument (Doc. 61) is DENIED as moot.

Signed in Baton Rouge, Louisiana, on May 14, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**